**Bob ROBERTS and Hugh Robertson, Partners, Plaintiffs in Error,**

**v.**

**Fay L. WRIGHT, Executrix of the Estate of Harper Wright, Deceased, and Fay L. Wright, Individually, Defendants in Error.**

**No. 36934.**

Supreme Court of Oklahoma.

Feb. 21, 1956.

Rehearing Denied March 20, 1956.

W. K. Garnett, Chas. H. Garnett, Oklahoma City, for plaintiffs in error.

Joe Cline, Homer Caldwell, Clay M. Roper, Oklahoma City, for defendants in error.

HALLEY, Justice.

The parties occupy the same positions here as in the trial court and will be referred to as there or by name.

The plaintiffs were brokers in Oklahoma City and were endeavoring to obtain a hospital for certain doctors. Plaintiff Roberts had talked to Dr. Harper Wright in regard to sale and purchase of Capitol Hill General Hospital, Inc. Dr. Wright died on or about May 30, 1953, testate. His wife, Fay L. Wright, was sole beneficiary under his will. At the time of Dr. Wright's death he owned twenty-seven shares of stock and his wife one and one-half shares. Dr. Alvin R. Jackson owned twenty-eight and one-half shares which together with the Wright stock was all of the stock in said hospital corporation. Bob Roberts went to Joe Cline, a son of Fay L. Wright and talked to him about the possibility of buying the hospital. All negotiations for the purchase of Mrs. Wright's stock in the hospital corporation were had with Cline. A contract for the sale of the stock was prepared. Cline insisted that the contract be entered into with Bob Roberts and not the doctors whom he represented. The by-laws of the hospital corporation provided that when any of the stockholders desired to sell their stock, the other stockholders would have the opportunity to purchase the stock. In the draft of the contract between Bob Roberts and Mrs. Wright nothing was said about this provision. After Bob Roberts had signed but before Mrs. Wright signed this agreement, an amendment to the contract was made in handwriting in ink in the sixth paragraph as follows: "and is subject to the By-laws, minutes and resolution and agreements therein contained of said corporation." This change was initialed by Bob Roberts and Mrs. Wright. Roberts also approved a letter extending the terms of the purchase agreement and was informed that a lawsuit on the stock was pending.

The lawsuit was filed by Dr. Jackson against Mrs. Wright in the District Court of Oklahoma County, No. 131354, to enforce the provision in the by-laws giving him the right to purchase the stock of Mrs. Wright. On the 5th day of November, 1953, a judgment was entered in that case requiring Mrs. Wright to convey to Dr. Jackson her individual stock and that in the estate of Dr. Wright and which judgment provided for the payment to Mrs. Wright of $70,000 for such stock. It was not all cash but the manner of payment was set out in the judgment.

With the delivery of the stock to Dr. Jackson, Mrs. Wright had nothing to convey to Bob Roberts. The plaintiffs brought suit for a five per cent commission on a sale value of $75,000. Judgment went for the defendant. No contract in regard to the commission was entered into other than the provision in the stock purchase agreement that Hugh Robertson is the recognized broker in the transaction and is entitled to the regular commission of five per cent.

■ Plaintiffs' suit was one of legal cognizance and was triable to a jury. The jury was waived and the case tried to the court. Judgment was for the defendant. It is well settled in this State that if there is any competent evidence reasonably supporting the trial court's judgment in such a case, it must be affirmed. Mulkey v. Anglin, 166 Okl. 8, 25 P.2d 778, 89 A.L.R. 980; Wood v. Harris, 201 Okl. 201, 203 P.2d 710.

■ It is clear that Mrs. Wright at no time agreed to pay the brokers unless their deal was consummated. The contract called attention to the provisions of the by-laws which permitted other stockholders to acquire the stock ahead of outsiders. The letter of extension also revealed this. When the evidence is considered as a whole we are forced to the conclusion that Mrs. Wright was only to pay the brokers in case she could deliver the stock and to this the brokers tacitly agreed. The trial court's judgment not only is sustained by the evidence but is manifestly fair. See 12 C.J.S., Brokers, § 95 a (3).

The plaintiffs argue that they were entitled to their commission when they furnished buyers ready, willing and able to

close the transaction but this position entirely overlooks the reservation in the purchase agreement between Roberts and Mrs. Wright and also the letter of extension which put Roberts on notice that the sale might never be completed. It was entirely contingent on whether Dr. Jackson exercised his option which he did.

Judgment affirmed.

JOHNSON, C. J., WILLIAMS, V. C. J., and WELCH, DAVISON, BLACKBIRD, JACKSON and HUNT, JJ., concur.